UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CORINNA DEMPSTER | CIVIL ACTION |
| VERSUS | NO. 05-2420 |
| JO ANNE B. BARNHART<br>COMMISSIONER OF SOCIAL SECURITY | SECTION "N" (3) |

## **ORDER AND REASONS**

Before the Court is Plaintiff Corinna Dempster's Objection to the Magistrate's Report and Recommendation. Having considered the record, the Magistrate Judge's Report and Recommendation, Plaintiff's objection thereto, and the applicable law, the Court concludes that Plaintiff's objection is without merit. For the reasons that follow, **IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**.

### **I. BACKGROUND**

Plaintiff Corinna Dempster was born on October 20, 1976 and was twenty-eight years old at the time at the time of the administrative hearing in this matter. She has a tenth grade education. (Adm. Rec. 63). Her past work experience includes employment as a janitor and a cashier. (Adm. Rec. 231-232). Dempster stopped working on June 2, 2002 due to a "lay off." On June 11, 2002, Dempster was involved in a motor vehicle accident. (Adm. Rec. 226). Since then, she has had severe pains in her neck, shoulders, and wrists, emotional distress, depression, and anxiety. (Adm. Rec. 61, 227).

On May 28, 2003 and June 19, 2003, respectively, Dempster filed applications for Title XVI supplemental security income ("SSI") and for Title II disability insurance benefits under the Social

Security Act, alleging that she became unable to work due to her disabling condition on June 11, 2002. (Adm. Rec. 46-48, 216-217). Dempster alleged disability due to cervical disk syndrome, arthritis of the neck, and nerve damage. (Adm. Rec. 57). Following an initial denial by the Social Security Administration on September 26, 2003, (Adm. Rec. 219-222, 18-23) Dempster filed a request for hearing before an administrative law judge ("ALJ") on October 28, 2003. (Adm. Rec. 28). The hearing was conducted on February 4, 2005 before ALJ Mark Dawson. (Adm. Rec. 223-249).

In a written decision issued April 25, 2005, the ALJ found the Plaintiff not disabled and denied her applications for benefits. (Adm. Rec.10-18). The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2003.
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
> 3. The claimant's degenerative disc disease, cervical spine; bilateral carpal tunnel syndrome; and mood disorder are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
> 6. The claimant has the following residual functional capacity: lift/carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours in an 8-hour day, and stand/walk 6 hours in an 8 hour day, she has moderate limitations with concentration and must avoid continuous, repetitive hand motion jobs.
> 7. The claimant's relevant past work as a janitor did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).
> 8. The claimant's medically determinable degenerative disc disease, cervical spine; bilateral carpal tunnel syndrome, and mood disorder do not prevent the claimant from performing her past relevant work.
> 9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f).

(Adm. Rec. 17).

On May 20, 2005, the Appeals Council denied Dempster's request for review, making the finding of the ALJ the final decision of the Commissioner. (Adm. Rec. 4-6). Dempster appealed that decision to this Court and the parties filed cross motions for summary judgment. (Rec. Doc. Nos. 14 and 15). The Magistrate Judge issued a Report and Recommendation recommending that Dempster's suit be dismissed. (Rec. Doc. No. 18). Dempster filed objections to the Report and Recommendation (Rec. Doc. No. 19), and this Court now considers the Magistrate's recommendation in light of these objections.

In her Objection to the R&R, Dempster urges the Court to reverse the ALJ's decision, or in the alternative, remand this matter to the Social Security Administration. Dempster contends that: (1) the ALJ failed to fully complete the record before rendering his decision; (2) the ALJ failed to consider new evidence; (3) the ALJ failed to give controlling weight to the opinion of Dempster's treating physician; (4) the ALJ ignored, disregarded, and misread parts of the record indicating Dempster's disability; and (5) the ALJ failed to address non-exertional mental limitations in his hypothetical.

### III. LAW

#### A. STANDARD OF REVIEW

##### 1. Review of the Magistrate Judge's Decision

The applicable statute and its implementing rule in the Federal Rules of Civil Procedure provide for *de novo* review of matters addressed by a Magistrate Judge provided that a timely objection thereto is filed. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). As noted above, timely objection was filed. Accordingly, the Court must review the matters raised anew and need not "accord any weight at all to the recommendations or findings of the magistrate judge." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3070.2 (2d

ed. 1997).

## 2. Review of Social Security Benefits Decision

Although the court is free to disregard the Magistrate Judge's Report and Recommendation, it must afford greater deference to the ALJ's decision. The scope of judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court must affirm the Commissioner's decision unless (1) the ALJ's determination is not supported by substantial evidence, or (2) the ALJ applied an incorrect legal standard. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

A district court may not try the issues *de novo*, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). The Commissioner's decision is granted great deference. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046 (1992). Despite its limited function, the district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial

evidence exists to support it. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Any of the findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

## B. ENTITLEMENT TO BENEFITS UNDER THE ACT

Disability insurance and SSI benefits are governed by Title II, 42 U.S.C. § 401 *et seq.*, and Title XVI, 42 U.S.C. § 1381 *et seq.*, respectively, of the Social Security Act. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. § 404.1 *et seq.* (disability insurance); 20 C.F.R. § 416.101 *et seq.* (SSI). Although technically governed by different statutes and regulations, disability insurance and SSI benefits are subject to identical legal standards. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994) ("The law and regulations governing the determination of disability are the same for both disability benefits and SSI."), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Johnson v. Bowen*, 864 F.2d 340, 343 n. 1 (5th Cir.1988) (per curium) ("The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program."); *id.* at 343 n. 2 ("The relevant law and regulations governing determination of a disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.").

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 401.1599 and Appendices §§ 416.901 to 416.988 (2003). The regulations include a five-step evaluation

process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At <u>step one</u>, the Commissioner will find that a claimant is not disabled unless he demonstrates that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At <u>step two</u>, the Commissioner will find no disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant successfully demonstrates that he has a severe impairment, the Commissioner determines at <u>step three</u> whether the impairment is on a list of impairments considered severe enough by the Social Security Administration to render one disabled; if so, the claimant qualifies. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment is not on the list, the inquiry proceeds to <u>step four</u> and the Commissioner assesses whether the claimant has the "residual functional capacity"[1] to perform his previous work. Unless he shows that he cannot, he is determined not to be disabled. If the claimant survives step four, the <u>fifth step</u> requires the Commissioner to consider "vocational factors" (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1570(c), 416.920(c). Unlike some of the earlier stages in the evaluation process, the burden of proof at step five is on the Commissioner.

The four elements of proof weighed in determining whether evidence of disability is

---

[1] Residual functional capacity is defined as "what a [claimant] can still do despite his limitations." 20 C.F.R. § 416.945(a).

substantial are: (1) objective medical fact; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id.* In this case, the ALJ undertook the prescribed five-step analysis and found that Plaintiff had satisfied the first three steps. At step 4, the ALJ determined that Plaintiff's medically determinable degenerative disc disease, carpal tunnel syndrome and mood disorder did not prevent her from performing her past relevant work as a janitor and thus she was not under a disability at any time through the date of decision.

## IV. ANALYSIS

### A. Dempster's Argument that the ALJ Failed to Complete the Record

Dempster submits as exhibits to her objection additional medical evidence that was not presented to the ALJ, the Appeals Council, or to the Magistrate Judge.[2] These records are not part of the administrative record for review by this court. It is well-established that in cases brought pursuant to § 405(g), evidence external to the administrative record is generally inadmissible, and

---

[2] The following is a comprehensive list of these medical records: Dr. Blotner's reports dated May 22, May 29, June 23, June 29, July 8, July 23, August 27, September 25, October 13, November 10, and December 10, 2003; January 12, February 10, March 23, April 27, May 25, June 24, July 29, August 26, October 6, November 1, and December 2, 2004; January 3, February 9, February 23, February 27, March 10, March 31, April 28, May 20, June 21, July 25, and August 17, 2005; Dr. Blotner's emails dated October 14 and 20, 2005; Dr. Metoyer's reports dated August 6, October 1, and October 29, 2003; Chabert Medical Center Emergency Department Discharge Instructions dated March 29, 2006, a notice of appointment with Dr. Franklin dated March 29, 2006, a notice of appointment with "ortho doctor" at Chabert Medical Center dated April 19, 2006, Thibodaux Medical Clinic records dated April 19, 2006 indicating that Dempster complained of severe headaches and a racing heart, a Community Care Referral Authorization Form by Dr. Talluri referring Dempster to Dr. McHugh for evaluation and treatment from May 9, 2006 to November 9, 2006.

on judicial review the court cannot consider any evidence that is not already a part of the administrative record. 42 U.S.C. § 405(g); *Lovett v. Schweiker*, 667 F.2d 1,2 (5th Cir.1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir.1985). When such evidence is submitted by a party, the court considers the evidence only to determine whether remand is appropriate under sentence six of § 405(g). The second clause of sentence six of § 405(g) provides that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

The Fifth Circuit has made it clear that in order to justify such a remand, (1) the evidence must be new,[3] (2) the evidence must be material, and (3) good cause must be shown for the failure to present the evidence earlier. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir.1994); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989). Implicit in the materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later acquired disability, or the subsequent deterioration of a previously non-disabling condition. *Haywood v. Sullivan*, 888 F.2d 1463, 1471-72 (5th Cir.1989); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987). For new evidence to be material, there also must exist the reasonable probability that it would have changed the outcome of the Commissioner's determination. *Latham*, 36 F.3d at 483.

Dempster alleges that the ALJ rendered an opinion based on an incomplete record of her treatment with Dr. Blotner. The record before the ALJ contained treatment notes by Dr. Blotner for the dates of April 22, May 23, and May 13, 2003. (Adm. Rec. 99, 158-60, 156-57). In the

---

[3] Evidence is not new if it is merely cumulative of what is already in the record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989).

psychiatric disability report issued on July 14, 2003, Dr. Blotner stated that Dempster's prognosis for recovery was poor, activities of daily living and concentration, persistence, and pace were impaired, that there was deterioration or decompensation in work-like settings, and that she was "not able to perform work of any kind." (Adm. Rec. 155). However, after considering the entirety of the medical evidence of record, the ALJ found that Dempster was not disabled.[4]

Dempster alleges that the ALJ should have obtained and considered additional treatment notes of Dr. Blotner for the dates of May 23, May 29, June 23, June 29, July 8, 2003. According to Dempster, these additional treatment notes provide a basis for Dr. Blotner's assessment that Dempster could not perform work of any kind. For the following reasons, the Court finds this argument to be without merit.

Because these medical records existed before the Appeals Council handed down its decision on May 20, 2005, the evidence is not new. *See, e.g., Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir.1994) (noting that evidence is new when issued after Secretary's determination). Moreover,

---

[4] The ALJ found that Dempster "may have some pain and discomfort due to her degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome and mood disorder that would impact her ability to perform work related activities ...[but] to the extent that claimant alleges impairments so severe as to preclude the performance of all sustained work activity, the undersigned does not find her fully credible." (Adm. Rec. 16). In making this determination, the ALJ noted that Dempster takes her kids to the park, goes to bingo, watches television, and sits around the house. (Adm. Rec. 16). He further noted that Dr. Blotner's treatment notes indicated that her mood and affect were only mildly to moderately depressed without anxiety or agitation, that her attention span, grooming, concentration, recent and remote memory were within normal limits, that her thought processes and associations were within normal limits, that her fund of knowledge was appropriate for level of education, that her insight was not impaired, that there was no evidence of delusions, hallucinations, suicidal, or homicidal ideation. *Id.* The ALJ noted that Dr. Watermeier's report stated that Dempster's MRI was within normal limits, her cervical spine exam revealed a normal lordotic curve, her range of motion of shoulder was full, there was no evidence of muscle atrophy, and that her muscle strength was 5/5 in the major upper extremity muscles.

after reviewing the additional treatment notes of Dr. Blotner, the Court finds that they are merely cumulative of evidence that already exists in the administrative record. In fact, with the exception of the May 22, 2003 treatment notes,[5] the additional treatment notes are virtually identical to the ones already present in the record. The Court finds it significant that the treatment notes for the dates of April 22, May 13, May 23, May 29, June 23, June 29, and July 8, 2003 each date state that Dempster was:

> [a]lert, oriented, cooperative with interview. Mood & affect are mildly to moderately depressed without anxiety or agitation. Attention span, grooming, concentration, recent & remote memory are within normal limits. Speech & language are within normal limits with respect to volume, rate articulation, coherence & spontaneity. Thought processes & associations are within normal limits in terms of rate, content, logic, abstract reasoning, & computation and without tangential, loose, or circumstantial reasoning. Fund of knowledge is appropriate for level of education. Insight (into life situations, illness, and need for treatment) & judgement (understanding of consequences of behavior & in social situations) are not impaired. There is no evidence of delusions, hallucinations, suicidal, or homicidal ideation. Agrees to suicide & homicide contracts.

(Rec. Doc. No. 19-2, Adm. Rec. 156-57, 159).

Even if these records were new, Dempster has not demonstrated that there exists a reasonable possibility that they would have changed the outcome of the Social Security Commissioner's determination. 42 U.S.C. § 405(g). As noted above, the additional treatment notes are merely cumulative of evidence already contained in the record. Moreover, the additional treatment notes, like the treatment notes already in the record, are contradictory to both Dr. Blotner's disability

---

[5] On May 22, 2003, Dr. Blotner observed that Dempster's mood and affect were "severely depressed, anxious, & irritable," and that her "[t]hought processes, associations, attention span, grooming, concentration, recent & remote memory" were "significantly impaired due to physical pain and emotional distress." *See* Rec. Doc. No. 19-2. The Court notes, however, that Dr. Blotner's discharge summary prepared on the following day, May 23, 2003, indicated that Dempster was only "mildly depressed and anxious without agitation," and that her "[t]hought processes, association, cognition, short term memory, long term memory, speech, language, insight, judgment, grooming and hygiene were within normal limits." (Adm. Rec. 99).

assessment and other objective medical evidence in the record.[6] The contradictory medical evidence more than adequately demonstrates that the ALJ's finding of no disability was based on substantial evidence in the record. Thus, the additional treatment notes fail the materiality requirement.

Finally, Dempster has not shown good cause as to why these medical records were not presented to the ALJ and/or the Appeals Council and made part of the administrative record; instead, she attempts to shift the blame to the ALJ. Approximately two months prior to the administrative hearing in this matter, Plaintiff's counsel sent a letter to the ALJ requesting that he obtain additional records of psychiatric care with Dr. Blotner and physicians at Leonard J. Chabert Medical Center.[7]

---

[6] Dr. Watermeier determined on March 17, 2003 that Dempster's disability status was "light work." (Adm. Rec. 108-109). On June 10, 2003, Dr. Adatto also determined that Dempster's disability status was "light work." (Adm. Rec. 106-107). Additionally, the State agency adjudicator determined that Dempster was capable of light work. (Adm. Rec. 16). Dempster admitted that her treating physicians at the Louisiana Clinic told her that she was capable of light duty work. (Adm. Rec. 231). Dr. Spiers, who performed a consultative examination of Dempster on September 11, 2003, noted that Dempster had arrived alone and had driven herself to the appointment. When asked by Dr. Spiers about her memory and concentration, she responded that she had been having problems with memory and concentration for a while, but that it was "mostly minor things." (Adm. Rec. 212). She also indicated to Dr. Spiers that she sits around the house, takes the kids to the park, goes to bingo, and watches television. (Adm. Rec. 214). When asked about her hopes for the future, Dempster said, "Hopefully, be able to go back to work again." *Id.* When asked on the Disability Supplemental Interview form to describe any changes in her ability to take care of her personal needs since her condition began, Dempster wrote, "No changes other than I don't dress-up like I used to because I really don't go anywhere except for dr. appt." (Adm. Rec. 70). When asked whether she watched television, she wrote, "I watch movies" for "2 hours lying in bed." (Adm. Rec. 72). Dempster further indicated that she goes out to visit friends or relatives "1 time a week" for "about 2 ½ hours." (Adm. Rec. 73).

[7] The letter reads, in pertinent part:

There is additional evidence pertinent to Corinna L. Dempster.

After having been prescribed surgery by her treating orthopedist, Orleans Orthopaedic Associates, she was given a referral to charity hospital/Leonard Chabert Medical Center because she does not have the funds to pay for the surgery.

11

Dempster contends that the ALJ's failure to obtain these records constitutes a violation of the ALJ's duty to complete the record. "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984).

Generally, however, the duty to obtain medical records is on the claimant. *Gonzalez v. Barnhart*, 51 Fed.Appx. 484 (5th Cir.2002); *see also Thornton v. Schweiker*, 663 F.2d 1312 (5th Cir.1981). Dempster was represented by counsel at the administrative hearing and the administrative level of review. The regulations provide that attorneys who represent Social Security claimants have a duty to obtain information and evidence to submit in support of the applicant's claim and to assist in bringing to the agency's attention information and evidence which support the

---

> Ms. Dempster continues under care for orthopaedic attention at Leonard Chabert Medical Center ... Please obtain all of the records from Leonard Chabert Medical Center.
>
> Ms. Dempster also continues under the care of Dr. Adrian Blotner through the present date; your list of medical records is obviously incomplete, since in item 6F it claims to only have medical records for the period of 4/22/03-7/14/03. Dr. Blotner has been regularly treating Corinna L. Dempster, and accordingly, please obtain all of those records as well.
>
> As part of the Administrative Law Judge's duty to fully and fairly develop the records, we request on behalf of Corinna L. Dempster that the Administrative Law Judge obtain all of the records from Dr. Adrian Blotner as well as from Leonard Chabert Medical Center relating to her treatment.
>
> Also, we request that the Administrative Law Judge obtain the full record of her medications ...
>
> Accordingly, please subpoena all of the foregoing records which will provide the Administrative Law Judge a full record ...

(Rec. Doc. No. 19-3).

claim of disability.  At the administrative hearing, counsel posed questions to both Dempster and the Vocational Expert.  At no point did counsel make any reference to additional medical records or make an objection that the record before the ALJ was incomplete because it lacked certain medical records.  As the Magistrate correctly noted, Plaintiff's counsel clearly indicated at the close of the hearing that he had no additional evidence.  (Adm. Rec. 249, Rec. Doc. No. 18, p.25).

Moreover, no additional medical evidence was submitted to the Appeals Council at the administrative level of review.  According to the request for review, Dempster requested review of the ALJ's action because the "decision does not apply the appropriate legal standard and also fails to consider the detailed medical evidence of combined disability from mental as well as physical bases."  (Adm. Rec. 7).  In her request for review, Dempster does not even mention an incomplete record or missing evidence, despite being instructed by both the ALJ and the Appeals Counsel that she was to submit any additional evidence with her request for review.  (Adm. Rec. 7, 10).

Furthermore, Dempster failed to present the additional records to the Magistrate in this case. Not until the Dempster's filing of her objection to the magistrate's R&R did she finally proffer the additional medical records.  The dates on the various treatment notes, along with the December 2004 letter sent by Plaintiff's counsel to the ALJ, demonstrate that the evidence was available prior to both the administrative hearing and the Appeals Council decision denying Dempster's request for review.  Nevertheless, Dempster has failed to present any explanation for why she did not present this evidence to the ALJ before the hearing date or to the Appeals Council before its denial of her request for review.  Accordingly, Dempster has not satisfied the good cause requirement.  *See Watts v. Harris*, 614 F.2d 515 (5th Cir. 1980), *cert. denied* 449 U.S. 863, 101 S.Ct. 168, 66 L.Ed.2d 80 (1980) (good cause not shown if appellant fails to explain why medical report was not obtained prior to administrative hearing).

Because the additional treatment notes of Dr. Blotner have not been shown to be either new or material, and because Dempster has failed to demonstrate good cause as to why the reports were not included in the underlying administrative hearing, they will not be considered as additional evidence in this case and remand is not warranted.

Dempster also argues that the ALJ should have obtained and considered Dr. Blotner's treatment notes for the dates after he prepared the disability report and up to the date of the administrative hearing. These records include treatment notes for the dates of July 23, August 27, September 25, October 13, November 10, and December 10, 2003; January 12, February 10, March 23, April 27, May 25, June 24, July 29, August 26, October 6, November 1, and December 2, 2004; and January 3 and February 9, 2005. For the same reasons as those stated above regarding the additional records for part of 2003, the Court finds that this evidence is not new, nor is it material. Moreover, Dempster has failed to demonstrate good cause for failing to introduce these medical records at an earlier stage in the proceedings.

Dempster further contends that record is incomplete in that it does not contain Dr. Metoyer's reports from August 6, October 1, and October 29, 2003. These records indicate that surgery may be an option for Dempster. However, Dempster testified at the hearing that she was scheduled for carpal tunnel on both wrists at Chabert Medical Center. (Adm. Rec. 229-30). Thus, the Court finds that this evidence is merely cumulative and is not new. Moreover, the Court finds that even if this evidence satisfied the "new" requirement for remand, it fails the materiality requirement. Further, Dempster has not shown good cause for failing to incorporate these records into a prior proceeding.

Dempster also argues that her case should be remanded because additional records of ongoing treatment since the administrative decision in this matter further demonstrates that she is disabled. These five pages of records consist of the Leonard J. Chabert Medical Center Emergency

Department Discharge Instructions from March 29, 2006, a notice of appointment with Dr. Franklin from March 29, 2006, a notice of appointment with "ortho doctor" at Chabert Medical Center from April 19, 2006, Thibodaux Medical Clinic records of April 19, 2006 indicating that Dempster complained of severe headaches and heart-racing, and a Community Care Referral Authorization Form by Dr. Talluri referring Dempster to Dr. McHugh for evaluation and treatment from May 9, 2006 to November 9, 2006.  This evidence, not in existence at the time of the administrative proceedings, meets the "new" requirement for remand, but fails on the "materiality" prong of the conditions for remand.  The Fifth Circuit has made it clear that "it is implicit in the materiality requirement that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994); *Haywood*, 888 F.2d at 1471.  In this case, the evidence does not address Dempster's condition at the time of her disability application (May 28 and June 19, 2003) or at the time of her hearing (February 2005).  Thus, the most that these reports reflect is the possibility that Dempster's non-disabling condition has deteriorated.  In addition, the Court's review of the "new evidence" attached to Plaintiff's objection convinces it that the new evidence would not have changed the outcome of the Commissioner's decision.  Accordingly, no remand is warranted based on the new evidence Dempster submitted.

As to Dempster's argument that the ALJ should have re-contacted her treating physicians, a physician need only be recontacted when the evidence received is inadequate to determine whether the claimant is disabled.  20 C.F.R. 404.1512(e).  Here, there was good cause to reject Blotner's conclusory opinion on disability.  As noted above, Dr. Blotner's opinion was not supported by his treatment records or by objective medical evidence contained in the record.  The Court concludes

that there was substantial evidence in the record to support the ALJ's finding that Dempster was not disabled; thus, the ALJ had no duty to recontact Dempster's physicians.

Furthermore, in order to obtain reversal for an ALJ's failure to fully develop the record, a plaintiff must demonstrate prejudice. *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir.1996). To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216,1220 (5th Cir.1984). Because the records at issue were cumulative and non-material, as stated above, Dempster has not demonstrated that she was prejudiced by the absence of the additional records.

### B.  Treating Physician's Opinion

Dempster contends that, in evaluating the opinion of her treating physician, Dr. Blotner, the ALJ did not consider each of the six factors set out for evaluating such evidence as required by 20 C.F.R. § 404.1527(d). *See Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir.2000) (requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician).

> Assuming arguendo that the ALJ did not consider the six factors, he was not required to do so with respect to the doctor's conclusion that [Dempster] was unable to work. The ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians. Subsection (d) is entitled "How we weigh medical opinions" and explicitly applies only to "medical opinions." Subsection (e) of the regulation expressly explains that some opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e) & (e)(3). Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." The factors set out at subsection (d) apply only to medical opinions, not opinions "reserved to the Commissioner." Assuming arguendo that the ALJ did not consider the six factors in subsection (d), he was not required to do so with respect to Dr. [Blotner]'s opinion that [Dempster] could not work. The doctor's opinion was not a medical opinion within the meaning of the regulation.

*Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.2003).

Moreover, the Fifth Circuit has made it clear that the ALJ need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. The Commissioner is not obligated to accept conclusory findings of any doctor, including a treating physician, or to grant such an opinion controlling weight where, as here, the findings are not supported and/or are clearly contradicted by substantial evidence of record. *See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir.2001).

Regarding Dr. Blotner's legitimate medical opinions, those expressed were inconsistent with the record; therefore, they were not entitled to any weight. In fact, Dr. Blotner's own treatment records contradicted his assessment of disability. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir.2000). In this case, the ALJ chose instead to rely upon the competing assessments of experts who had examined Dempster themselves. The court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. The Court's review of the record reveals that the ALJ has reasonably resolved all conflicts and that the record more than adequately supports his conclusions. Dr. Watermeier determined on both March 17, 2003 that Dempster's disability status was "light work." (Adm. Rec. 108-109). On June 10, 2003, Dr. Adatto, also determined that Dempster's disability status was "light work." (Adm. Rec. 106-107). Additionally, the State agency adjudicator determined that Dempster was capable of light work. (Adm. Rec. 16). Dempster admitted that her treating physicians at the Louisiana Clinic told her that she was capable of light duty work. (Adm. Rec. 231). Dr. Spiers, who performed a consultative examination of Dempster on September 11, 2003, noted that Dempster had arrived alone and had driven herself to the appointment. When asked by Dr. Spiers about her memory and concentration, she responded that

17

she had been having problems with memory and concentration for a while, but that it was "mostly minor things." (Adm. Rec. 212). She also indicated to Dr. Spiers that she sits around the house, takes the kids to the park, goes to bingo, and watches television. (Adm. Rec. 214). When asked about her hopes for the future, Dempster said, "Hopefully, be able to go back to work again." *Id.* When asked on the Disability Supplemental Interview form to describe any changes in her ability to take care of her personal needs since her condition began, Dempster wrote, "No changes other than I don't dress-up like I used to because I really don't go anywhere except for dr. appt." (Adm. Rec. 70). When asked whether she watched television, she wrote, "I watch movies" for "2 hours lying in bed." (Adm. Rec. 72). Dempster further indicated that she goes out to visit friends or relatives "1 time a week" for "about 2 ½ hours." (Adm. Rec. 73). This substantial medical evidence does not support and in fact, clearly contradicts, Dr. Blotner's conclusory findings; accordingly, the ALJ did not err in failing to accept Dr. Blotner's findings.

### C. Consideration of the Evidence in the Record

At several points in her objections to the Magistrate's R&R, Dempster contends that some findings of the ALJ are contrary to the evidence in the record. Each of these assertions is meritless.

First, Dempster asserts that the Magistrate Judge and the ALJ misread the October 1, 2002 MRI and ignored the cervical discogram. According to Dempster, the diagnosis of "sprain" is not the resulting diagnosis of the MRI, as stated by the Magistrate, but rather the pre-MRI diagnosis. It is unclear from reading the MRI report whether the sprain diagnosis was rendered pre-MRI or post-MRI; however, the Court finds this fact irrelevant in light of the fact that the Magistrate specifically acknowledged the radiologist's impression of:

> Degenerative hypertrophic changes at C4-5 and C5-6 with effacement of the anterior cervical subarachnoid space without evidence of displacement or impression upon the cervical cord. No evidence of disc herniation, central or lateral foraminal

18

stenosis otherwise identified.

(Rec. Doc. No. 18, p. 6, quoting Adm. Rec. 133). An examination of the record shows this to be an entirely accurate description of the MRI results. Moreover, the Magistrate specifically mentioned the cervical discogram ordered by Dr. Watermeier. (Rec. Doc. No. 18, p. 6). Thus, Plaintiff's objection on this point is without merit.

Dempster also asserts that the ALJ's findings were contrary to the reports of Dr. Metoyer and Dr. Watermeier and that the ALJ chose to ignore or disregard these records. In support of this argument, Dempster points to the fact that the ALJ did not mention Dr. Metoyer in his decision. For the reasons discussed earlier herein, specifically, in footnote 6, the ALJ's decision regarding Dempster's disability status is supported by substantial evidence, which expressly includes the findings of both Dr. Watermeier and Dr. Metoyer. Accordingly, Plaintiff's objection on this point is also without merit.

### D. Hypothetical

Dempster alleges that the ALJ failed to incorporate into his hypothetical question to the vocational expert ("VE") her non-exertional mental limitations. The ALJ's hypothetical specifically asked whether "a moderate limitation and ability to concentrate, such that she could not perform work which would require her to concentrate for extended periods of time without a break" would preclude return to her prior unskilled work. (Adm. Rec. 244). In this case, the medical records as a whole did not support Plaintiff's contention regarding the severity of her mental limitations. Further, counsel for Dempster was given an opportunity to cross-examine the VE and introduce more than moderate limitations into the hypothetical. Because the ALJ's hypothetical question to the VE included all of the limitations supported by the record, and because Dempster failed to carry her burden to show that she cannot perform her past relevant work, this argument is without merit.

## V. **CONCLUSION**

In sum, the record provides substantial evidence supporting the Commissioner's decision that Dempster is not disabled. Accordingly, for all of the foregoing reasons and for the reasons provided by the Magistrate Judge in his R&R, **IT IS HEREBY ORDERED** that the Commissioner's Motion for Summary Judgment is **GRANTED**; that Plaintiff's Motion for Summary Judgment is **DENIED**; and that Plaintiff's complaint be and hereby is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 30th day of March, 2007.

_____
**Kurt D. Engelhardt
United States District Judge**